Okay, when you're ready, counsel. May it please the court. Gary Gassick. I think we're set for 10 minutes aside on this one. Is that right? Yes. 10 minutes. Yeah. There we go. Okay. May it please the court. Gary Gassick here for Jerry Arendt and David Brown. I'm pleased that Mr. and Mrs. Arendt are with me today in the front row on your far right. This case has a threshold issue. We do not get to the constitutional issue unless there is a determination that either state action or an alternate argument I have, state action exemption applies. What I did in the briefs, and I just want to mention, I do want to reserve a couple minutes, I do want to mention that I took two cases in the briefs. One was a case you authored, Judge Fletcher, and that was George v. Edholm, and the other was Board v. C. Alaska. I used them, and I just want to repeat the lines in those cases to show the dichotomy of what is and what isn't a state action exception. In C. Alaska, the sentence was, made the most clarity, not in any way compelled by the federal government. That was in reference to a federal statute, the Alaskan Native Claims Settlement Act. The other comment in C. Alaska that reads true is, it merely exercised its option under the act. So that shows the con of my pro and con example. The George case versus Dr. Edholm, which you authored, Judge Fletcher, recognizes critical points with quotes from cases you recognized. The first one is, the threshold one, is when the state provides significant encouragement, either overt or covert. In this case, it cannot start without looking to the background of the Pension Protection Act and what it was designed to do, and I pointed out the congressional record as to the goal simply was to avoid a bailout of the private pension system. Let me ask you a question or two. I'm not as astute or knowledgeable about all this as Judge Fletcher, but there's a couple of questions that I have which I think are pretty controlling for me. The government didn't cause this plan to be in critical status, did it? Obviously not, no. The private parties did. Well, it's the congressional record I pointed to. I mean, I'm just trying to make sure I know what you're really saying. We have a plan. The government allows them to set up a plan. Then they got it in critical status, their plan. Yes. And then when they wanted to change this plan to get it not in critical status, they couldn't do that without going to the collective bargaining parties, could they? That was their choice as a first step. There was a default provision. As the regulations suggest, it has to go to the collective bargaining parties for approval, and if not, then there's another step. Well, they took it right to the collective bargaining parties, right? Correct. And the collective bargaining parties, of which your client is a part, approved it. There really wasn't any choice. It was a do it or else. Did they approve it or didn't they? They approved it. All right. So the rehabilitation plan reflects reductions in future benefits and increases in contributions that the plan administrator determines are reasonably necessary to emerge from the critical status. Who's supposed to make those determinations? The plan administrator. Correct. So the plan administrator has a critical status plan. They come up with a way to resolve this. They take it to a party who represents your client for approval and get that approval, and all of a sudden, they're government actors? I start with their own admission. Well, now, just a minute. I'm just trying to see what happened here. The government didn't mandate what the plan administrator had to do in this action. The government didn't get them into critical status. The government just said, if you ever get there, you're going to have to do something about it. And the best way to do it is you decide and take it to your people, the employee's representative. And if you all agree on something, that's what we ought to do. And that happened. And now, because that happened, they are now government actors. Here's how I arrived. That's your argument. Here's how I arrived. Isn't that your argument? It's intertwined in my argument, but I'd like to respond to it, okay? The state's involvement may not be immediately obvious. That's what the case law holds. And if you don't look at this as the fund looked at it the best way, they said in their notice to their employee and to their membership, the Board of Trustees is required to comply with the Pension Protection Act, which mandates these benefits changes. And the case law focuses on the encouragement. We have $1,100-a-day fines, $1,000-a-day fines. I hate to use the phrase, Judge Smith, the fund had a proverbial gun to its head. It either does it or else. Well, it's got to do something to make the reductions. There's no question. Or they get taken over. Or they have to pay. But what they do to make the reduction is their decision, not only their decision, but a decision they ought to work out with the employee's representative, and that's what they did. I can't make sense out of that argument in the face of the see Alaska language that says, see Alaska was not in any way compelled by the federal government. This case is full of compelled by the federal government. Yes, they were compelled to reform the plan to keep it from going into default. But the government did not mandate, notwithstanding the language of what you read, they did not mandate, the act does not mandate that there be a change in the vesting or the eligibility for retirement. There's a list of pre-age 65 benefits in the brief. And what PPA said was, you can't touch the age 65 benefits, but you can touch anything else. And I'm sorry, Judge Smith, one more metaphor, maybe it's better than the ones I used in the brief, is the Rube Goldberg machine. The federal government created this Rube Goldberg machine. You see it in commercials. It's a series of chain reactions. And it's like the federal government said, we don't care if you pick a four-ounce ball bearing, a six-ounce ball bearing, or an eight-ounce ball bearing, but you're going to put one of those at the top lever of this Goldberg machine, and the rest just happens. You know, I'm having trouble with your argument because of how far it might go. The federal government and the state government require private actors to do all kinds of things. And your argument is pushing me to a conclusion that any time some private party does something because compelled by state or federal law, that person is a federal or state actor. I can't believe that that's so. I would tend to agree with you if this whole circumstance, scenario that this court in George spoke of. Let me talk about George, and you keep referring to George. Here are the facts in George. We have a man who's picked up by the Pasadena police. They take him to the hospital, and they direct a doctor to remove forcibly from his rectum the drugs as against his strenuous objection. And he then sues the two police officers for what the doctor did. And we say what the doctor did can indeed be attributed to the police officers because the private doctor was acting in his direction. We did not hold that the doctor himself was engaged in state action so the doctor could be sued. That question we did not reach. We only said that the state officers that compelled him to do that made his action state action for purposes of liability of the officers. What makes a difference for me is Congress saw that it could not encourage pension funds to suspend benefits voluntarily. When Congress acknowledged that the Pension Benefit Guarantee Corporation was in the hole for $23 billion and comments by senators that I cited to you said we're not going to dump this on the backs of the U.S. taxpayers, that's the difference in the other situations you're referring to. This was the government's stake in this. They had a pension fund was their stand-in. The goal here, as the senator said, was to keep the private pension system from falling into the Pension Benefit Guarantee Corporation and falling on the backs of the taxpayers. That's the difference in this statute. And then it's enhanced by my phrase is do it or else with the $1,000, $1,100-a-day penalties, ultimately. It's pretty clear they're compelled to do it. I got that part. Yes. But I called it the linchpin in my brief. Judge Smith, when they got a stake of $23 billion. I've heard your argument. I'm not sure I'm buying it, but I've heard it. The second part of my question, which I really didn't have time to ask you, but I think it's pretty important. Prior to 1984, there was no interest in early retirement. No, and that's why the statute was amended. Just a minute. Early retirement could have been eliminated or modified without a problem. In fact, when your client entered this plan, there was no early retirement benefit. And since that time, it's been subject to heavy and continual changing regulation ever since he's been in there. Then Congress enacts the anti-cutback rule, which is what you're really after. And then Congress says, I'm not going to have the anti-cutback rule as I've enacted it. I'm having a tough time understanding then how these people who are just merely acting based on what Congress doesn't or does do in early retirement then become state actors. I don't accept one thing factually. It says if Mr. Arndt became a member of his union in 1978, he was always under the auspices of ERISA from 1974 on. I agree with you. But he could have had in that period of time, because there wasn't any anti-cutback rule, it could have been changed any time, and he wouldn't have had an action. It wasn't. And in 1984, it was raised to the level of the age 65 pension. You cannot cut them because there are benefits already earned. You yourself as federal judges have a rule of 80. You have age 65 plus 15. Same concept, different ages. But if they changed it, the question is if they changed it, would I have any... I think if we envision hypothetically a deficit reduction act of 2017 or 2018 that all active judges who haven't taken senior status or retired, when they do there will be a 15% reduction in their retirement salary. I think you'd have the same objection that you earn that because the concept of pensions changed in 74 from gratuitous plans, and 74 changed it. If you join and create a plan, it's got to follow ERISA. And it turned into an earned... I don't want to paraphrase it correctly. It took it from a... You've earned your senior status, retirement salary all the time you were an active judge. That's what the theory changed to, a deferred payment theory because you earned it while you were in active status. We've got the argument. This has turned into a 15-minute argument after all. Let's hear from the other side, and we'll give you a chance to respond. Thank you. May it please the Court. Jerry Synzak, appearing on behalf of the United States. To pick up on some points that Judge Smith was raising, in this case plaintiffs seek to hold the federal government responsible for their planned decision to cut their early retirement benefits, but the federal government was not responsible for the funds' financial straits, which left them in a position of being underfunded and unable to pay the benefits that they had promised their participants. Not only that, but they sued the Department of Labor, and we threw it out. That's also true, Your Honor. And as Your Honor, as this Court held in that case, the Department of Labor played no role in reviewing or approving the plan. I should ask you, but I should have asked you. Are you splitting arguments? Yes, we are splitting the time equally. So, okay, hopefully there will be time for the fund to answer questions. And the government was likewise not responsible for the actual decision. That was a decision that, under the PPA, left up to the private actors, to the collective bargaining parties, as well as the fund trustees. And for that reason and the reasons we state in our brief, there was no state action here. I think, in particular, the Sullivan case from the Supreme Court is on point on that. I think the main complaint that plaintiffs make is the change to the anti-cutback rule, which then authorized the cut here. And that's very similar to the facts in Sullivan, in which the private actors were not permitted to, in that case, withhold payment. Then the legislator allowed them to withhold payment. And that change in the law was found not to be state action when the private parties followed it. Now, I should know this, but I do not. You're here as an intervener. Has there been a cause of action filed against you, or are you intervening without yet any request for relief against the government? There has been no request for relief against the government. We're intervening because of this. The only request for relief is against the trust. It is, and that is an unusual aspect. Wasn't there a complaint? Maybe I'm getting the cases confused. You were originally sued, and then they amended to drop you. That's correct, Your Honor. The Department of Labor was originally sued. This court found that it was not responsible for what happened here, and therefore they amended and added the plan, but did not bring a private cause of action against the plan or a private cause of action. Then you intervened as a former defendant. We intervened because they challenged the constitutionality of the PPA. Okay. As the suit now stands, the relief sought is not against you, but rather against the trust. That's correct. I think, though, the upshot of the suit, if this court obviously were to find that it wasn't taking, it would open the door to suits in the Court of Federal Claims. Counsel has conceded that we don't reach the constitutional issues if there's no state action. That's correct, Your Honor. Yes, we would ask you to hold that there's no state action. Well, there might be one in the sense that there may be an argument for a regulatory taking, but in the sense of a sort of a direct taking as acted by the government. I'm not so sure. A regulatory taking, maybe? Of course we would agree with you that there's no per se taking here, but we also think that there is not a regulatory taking or state action for a regulatory taking under cases like Sullivan because the action itself, the decision to cut the benefit, was not compelled by the federal government. Same answer, okay. And I think, as Your Honors I'm sure are aware, the upshot of his argument is that a plan that is failing cannot cut benefits to save itself, or if it does, the federal government is responsible for paying those benefits. And we know that's not the law. The Supreme Court has said quite clearly that justice and fairness do not require the public and the government to pay, to bail out a private fund, and that the responsibility lies with the employers and the participants in the fund. Your Honors have no other questions for the government? Thank you. May it please the Court, my name is Bill Sims. I'm here on behalf of the private party defendants, that would be the Washington-Idaho-Montana Carpenters' Employers' Trust, as well as Zenith, the administrators. Never thought I'd have to do that. In any event, Your Honors, as I was saying, I'm here on behalf of the private parties who I submit has been held into court for simply doing nothing other than following the law and exercising its discretion over the management of a plan and doing its part to act in the best interest of the beneficiaries of that plan. I say that not to be flip or to be cute about it, but to say that because we're here after ruling on a 12b-6 and in the complaint, where the complaint is devoid of any allegations of any conduct by my clients, the private parties, that it ought to rise, that it ought to be deemed to have risen to an arm of the sovereign. And Your Honor, you talked about the George case. Counsel talked about the George case. The distinction that you brought up, I think, is an important distinction. It's laid out even more clearly in my mind in the Sutton matter, where there is described to what degree will the government be liable for actions of a private party whom they quote-unquote deputize to act versus the responsibility of when the defendant is a private party. And when there's a private party, the phrase that you see in the case law is, there's got to be compulsion and something more. Why? Because all laws to a degree mandate, govern, regulate behavior. And many laws often provide consequences to the private party who does not act in accordance with the law. We all know that. The question is, does that raise state action? The answer, no. The concern would be anybody who follows the law would create state action. In this case, we don't have conspiracy, joint activity, concert, and so forth. And I would suggest that the Sutton v. Providence case is the one that would govern that and describe that. So in short, since we're running short on time and not quite close to lunch, there's really two or three essential reasons why the trial court ought to be affirmed in this matter. The first one is the fact that the complaint, like I said, is devoid of any allegations of the type of behavior that would rise to a level of state action. The second one on the merits with regards to the taking. Aside from the analysis in the briefs under Conley and concrete pipe in those cases about to what degree is the regulatory taking, I would submit and focus as well is that the type of property, if proper at all, that's alleged in the complaint is not the type that is cognizable under the Fifth Amendment. Your Honor, I believe that you hit the proverbial nail on the head, I guess, and the issue here is when both plaintiffs, pursuant to the allegations of the complaint, entered the plan, there was no federal guarantee to early retirement benefits. The act was amended in 1985, I believe. It provided a statutory federal right. What Congress can giveth, Congress can taketh away. Regulatory grace, there is not a property interest that was lost. Undisputed in the four corners of the complaint, neither gentleman had entered the phase where they inherited any property right. There simply isn't any property here. Unless there's any other questions, I have nothing else to submit, Your Honor. Nothing. No, thank you. Let's put a minute on the clock. Very briefly, as far as no property right, Hines used this phrase, the process by which employees already accrued pension account becomes irrevocably his property. You look through the statute itself, it has, Arisa uses phrase like, empowered to bring a civil action to recover the benefits due him, benefit accrual requirements, accrued benefit to which each participant is entitled. Those are property rights. Same as I suspect your rule of 80 would be if it was adjusted, because you've already earned it. And that's the same principle that applies to Mr. Arndt. The, what I can't and may accept is, George uses the phrase and quotes, the private party acted as an instrument or agent of the government. I might have the same problem that you appear to have if this all wasn't going to hit the federal government and have the pension benefit guarantee corporation fail. This was a backstop designed to prevent that from happening. It's a beautiful conduit to create the statute this way. Same as I said, it doesn't matter whether you picked a four-ounce, six-ounce, or eight-ounce ball bearing, you're going to be told to roll it. And that's what happened here. And I think one other case I'd like to cite that wasn't in my brief is Crovey County of San Diego, 593-841. Judge Thomas and Judge Fisher were on that panel. Judge Thomas wrote at page 865, further, in the context of 1983 claims, we have explained that the requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury. That's how I see the act. Okay. We've got it. Thank you. Thank both sides for your arguments. Thank you. Appreciate it. Arendt and Brown v. Washington, Idaho, Montana, Carpenters Employers Retirement Trust Fund is now submitted for decision. And that completes our argument for this morning.
judges: W. Fletcher, Fisher, N.R. Smith